UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CAREN FREDERICK, on behalf of herself and all other class members similarly situated | : : : : : 1:19-15887 (NLH)(KMW) : : OPINION : |
| Plaintiff, | : : |
| v. | : : : |
| LAW OFFICE OF FOX, KOHLER & ASSOCIATES, P.L.L.C., L.L.C., f/k/a/ National Legal Center, P.L.L.C.; ARTHUR M. KOHLER; ROSANNA FOX; COMERICA BANK; GLOBAL CLIENT SOLUTIONS, L.L.C.; John Doe(s) 1-100, said name of John Doe(s) being fictitious, | : : : : : : : : : |
| Defendants. | : : |

APPEARANCES:

JOSEPH M. PINTO
POLINO & PINTO, P.C.
MOORESTOWN TIMES SQUARE
720 EAST MAIN STREET, SUITE 1C
MOORESTOWN, NJ 08057

 *Attorney for Plaintiff.*

ERIK BERGLUND
GREENSPOON MARDER LLP
100 WOOD AVENUE SOUTH, SUITE 207
ISELIN, NJ 08830

 *Attorney for Defendants Global Client Solutions, L.L.C. and Comerica Bank*

VINCENT E. GENTILE
DRINKER BIDDLE & REATH LP
105 COLLEGE ROAD EAST, P.O. BOX 627
PRINCETON, NJ

    *Attorney for Defendants Law Offices of Fox, Kohler & Associates, P.L.L.C., Arthur M. Kohler, and Rosanna Fox.*

**<u>HILLMAN</u>, District Judge**

    Plaintiff Caren Frederick filed a complaint against Defendants in New Jersey Superior Court in June 2019. Defendants Law Office of Fox, Kohler & Associates P.L.L.C., Arthur M. Kohler, and Rosanna Fox (collectively known as the "FKA Defendants") removed this action to the District of New Jersey on July 26, 2019 with consent from all other Defendants. On August 16, 2019, the FKA Defendants, Comerica Bank, and Global Client Solutions, L.L.C. moved to compel arbitration in two separate motions.  These motions have been fully briefed and are ripe for adjudication.

    For the reasons discussed below, the Court will grant Comerica Bank and Global Client Solutions' motion and deny the FKA Defendants' motion to compel arbitration.

   I.  BACKGROUND

    Caren Frederick is a resident of New Jersey.  In June 2013, she entered into what is described as a debt settlement agreement program with National Legal Center, which currently operates as Fox, Kohler & Associates, P.L.L.C. (FKA).  FKA is a New Hampshire entity with its principal place of business in New

Hampshire.  Defendants Arthur M. Kohler and Rosanna Fox are members of FKA.

Frederick met with Michael Nobile, a representative of National Legal Center, in June 2013.  Around the same time, on June 12, 2013, she signed a Professional Legal Services Agreement ("PLSA") with FKA.  This PLSA mentioned an attorney named Garrett Elias, whose name and New Jersey Bar number were provided in the upper right-hand corner of the agreement. According to Frederick, she was unable to verify that Elias had an office or telephone number in New Jersey at the time that the PLSA was in place.  Frederick claims she has never met with nor spoken to Garrett Elias.  Frederick understood that if she was sued by her creditors, Elias would represent her.

Section 32 of this PLSA contains a clause entitled "Dispute Resolution: Arbitration: Choice of Law."[1]  Frederick does not

---

[1] The entirety of this clause reads:

"32. Dispute Resolution • Arbitration • Choice of Law: Each party agrees to enter into good faith discussions and if needed, allow up to 180 days to seek resolution prior to either party filing a formal complaint.  Any dispute that cannot be resolved between the parties after 180 days must be resolved by binding arbitration that replaces the right to go to court before a judge or a jury which may limit each party's rights to discovery and appeal.  This agreement shall be submitted for binding arbitration in accordance with the rules of the American Arbitration Association.  Neither party may bring a class action suit or other representative action in court, nor bring any claim in arbitration as a class action or other representative action.  The law of the State of DE shall govern this agreement and arbitration proceedings may occur by teleconference for

recall being provided with a signed copy of the PLSA, and claims to not have one in her possession.

Also on June 12, 2013, Frederick signed a Dedicated Account Agreement & Application ("DAAA") with Global Client Solutions L.L.C. ("Global").  Global is an Oklahoma limited liability company.  Global is wholly owned by Global Holdings L.L.C. ("Global Holdings").  Though Frederick signed the PLSA and the DAAA at the same time, these are separate agreements with separate entities.  The DAAA is a three-page document that contains a section entitled "ARBITRATION OF DISPUTE – IMPORTANT NOTICE AFFECTING YOUR RIGHTS" on the second page.[2]

---

convenience.  Each party agrees to share in the Arbitrator fee. Judgment upon the decision of the Arbitrator may be entered into any court having jurisdiction.  The prevailing party shall be entitled to recover reasonable legal fees and costs, including Attorney's fees.  Should you enter into a payment plan outside of the original schedule or we reschedule legal fees to accommodate your finances and you default, we reserve the right to bring legal action to enforce the agreement."

ECF No. 8-2, Exhibit A.

[2] The entirety of this section reads:

"ARBITRATION OF DISPUTE – IMPORTANT NOTICE AFFECTING YOUR RIGHTS In the event of any controversy, claim or dispute, whether statutory or otherwise, between the parties arising out of or relating to this Agreement, or to any of the services provided pursuant to this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this Agreement to arbitrate, shall be determined by arbitration in Tulsa County, Oklahoma, or in the county in which the consumer resides, in accordance with the laws of Oklahoma.  The parties agree, the arbitration shall be administered by the American Arbitration

Frederick remembers signing these agreements but does not remember reading them and did not consult with an attorney prior to signing.  According to Frederick, "neither Mr. Nobile nor anyone else explained to her what the documents were, what they contained, what the paragraphs of the documents meant, what arbitration meant, or that an arbitration clause was to be found

---

Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA.  The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics.  The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgement on the award made by the arbitrator may be entered in any court having jurisdiction over the parties.  If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement.  The parties agree that either party may bring claims against the other only in his/her or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.  Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative class proceeding.  The parties shall share the cost of arbitration, including attorneys' fees, equally.  If the consumer's share of the cost is greater than $2,000.00 (two-thousand dollars), the company will pay the consumer's share of the costs in excess of that amount.  In the event that a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to the costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award. *Binding arbitration means that both parties are giving up the right to trial by a jury.* It also means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. This section and the requirement to arbitrate shall survive any termination."

ECF No. 6-3 (emphasis in original).

in each document." She further claims that "no one explained the arbitration process to her or how much it might cost, or gave her a copy of the AAA rules or explain them."

Under this debt settlement program, Frederick agreed to the withdrawal of funds from her New Jersey bank account to be held in escrow. According to Frederick, these funds were not held by FKA, but rather by Global, pursuant to the agreement between Global and Frederick.

After Frederick signed the agreement with Global, Global opened an account for Frederick with Comerica Bank. Comerica Bank is a Texas banking association with its principal place of business in Dallas, Texas. Global sent Frederick a letter on June 17, 2013, entitled "Welcome to Global Client Solutions, L.L.C." This letter provided Frederick with information about her "dedicated account," her "dedicated account provider," and how to access and track this account.

According to Frederick, she ended her agreement with Global in April 2017. As a result, Frederick alleges that Global withdrew $29,705.28 from her checking account, but only dispersed $14,385.30 to her creditors. Frederick alleges that the difference was paid to cover "attorneys [sic] fees, transaction fees, service fees, and bank and another fees." Frederick contends that these fees were illegal.

Frederick filed an eight-count complaint in the Superior Court of Burlington County, New Jersey on June 13, 2019 seeking class certification and damages.[3]  Frederick's alleged damages include accumulation of interest and penalty charges on the monies enrolled in the debt program, emotional distress, pain and suffering, attorneys' fees, out of pocket costs, court costs and litigation expenses, degradation of her credit score and rating, as well as compensatory, punitive, and treble damages.

The FKA Defendants removed this action to the District of New Jersey on July 26, 2019.  On August 16, 2019, the FKA Defendants and Global Solutions and Comerica Bank made two separate motions to compel arbitration.  Frederick filed briefs in opposition on September 20, 2019.

II.  DISCUSSION

A. Subject Matter Jurisdiction

This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between

---

[3] The counts in Frederick's complaint include: (1) violations of the New Jersey RICO Law; (2) violations of the New Jersey Consumer Fraud Act; (3) violations of the New Jersey Debt Adjustment and Credit Counseling Act and Money Transmitters Act; (4) Civil Conspiracy; (5) Illegal Contract and Unjust Enrichment; and (6) Unconscionability; (7) Class Certification; and (8) Other Damages to the Lead Plaintiff. ECF No. 1-1.

the parties[4] and the amount in controversy exceeds $75,000.[5]
Alternatively, this Court has subject matter jurisdiction over
this action through the Class Action Fairness Act.

B. Analysis

1. Standard for Motion to Dismiss and Compel Arbitration

The Third Circuit has typically treated motions to compel
arbitration "as a motion to dismiss for failure to state a claim
upon which relief can be granted." Palcko v. Airborne Express,
Inc., 372 F.3d 588, 597 (3d Cir. 2004). "[A]s a matter of
federal law, any doubts concerning the scope of arbitrable
issues should be resolved in favor of arbitration, whether the
problem at hand is the construction of the contract language
itself or an allegation of waiver, delay, or a like defense to
arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp., 460 U.S. 1, 24-25 (1983); see Ehleiter v. Grapetree

---

[4] Frederick is a New Jersey citizen and resident.  Global is an
Oklahoma entity wholly owned by Global Holdings.  Global
Holdings has members domiciled in several states including
Oklahoma and Florida, but not New Jersey.  Comerica Bank is a
Texas entity with its principal place of business in Dallas,
Texas.  FKA is a New Hampshire professional limited liability
company.  Its only members, Kohler and Fox, are citizens and
residents of New Hampshire.

[5] Frederick's complaint does not assign a dollar amount to her
damages.  Frederick does specify that she is entitled to
$14,698.62 in compensatory damages.  Taking into consideration
the maximum amount of punitive damages permitted under New
Jersey law, combined with Frederick's claims to other damages,
including treble damages, the amount of controversy is well over
$75,000.00.

Shores, Inc., 482 F.3d 207, 219 n. 10 (3d Cir. 2007).  Before compelling arbitration, the Court must be satisfied that the parties have an agreement to arbitrate, because "arbitration is a matter of contract and a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit." Portfolio One, LLC v. Joie, 2019 WL 291157, at *3 (D.N.J. Jan. 23, 2019) (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).

To determine whether a valid arbitration clause exists, the Court engages in a two-step process in which it asks: (1) whether the parties entered into a valid arbitration agreement and (2) whether the dispute at issue falls within the scope of the arbitration agreement.  Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 525 (3d Cir. 2009).  The focus of this two-step inquiry is on "the validity and scope of the arbitration clause, rather than the contract as a whole." South Broward Hosp. Dist. V. MedQuist Inc., 516 F.Supp.2d 370, 381 (D.N.J. 2007) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)).

For the first step of this process, the Court will apply "ordinary state-law principles that govern the formation of contracts." Dicent v. Kaplan Univ., 758 Fed.Appx. 311, 313 (3d Cir. 2019) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009)).  As many courts have

9

acknowledged, including this one and the Third Circuit, the Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration." Kirleis, 560 F.3d at 160 (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003)). However, this presumption does not extend to the determination of whether the parties entered into a valid arbitration agreement. Id. (citing Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002)).

During the second step of this inquiry, the Court acknowledges another presumption in favor of arbitrability. In At&T Technologies, Inc. v. Communications Workers of America, the Supreme Court held that "there is a presumption of arbitrability in a sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" 475 U.S. 643, 650 (1986). The Supreme Court continued to hold that "[d]oubts should be resolved in favor of coverage." Id. (internal citations omitted); see also Moses H. Cone Memorial Hosp., 460 U.S. 24-25 ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . .").

10

The Third Circuit has interpreted New Jersey law as
requiring arbitration clauses to contain three crucial
components: "First, it must identify the general substantive
area that the arbitration clause covers"; "Second, it must
reference the types of claims waived by the provision"; "Third,
it must explain the difference between arbitration and
litigation."  In Re Remicade, 938 F.3d 515, 525 (3d Cir. 2019)
(citing Moon v. Breathless Inc, 868 F.3d 209, 214-15 (3d Cir.
2017)).

Parties may contract around allowing a court to determine
threshold questions of whether the parties are bound by an
agreement to arbitrate.  Singh v. Uber Technologies Inc., 939
F.3d 210, 215 (3d Cir. 2019).  To do this "the arbitration
agreement need only include a clause - a delegation clause -
that reserves arbitrability questions for an arbitrator to
decide." Id. (citing Rent-A-Ctr., West, Inc. v. Jackson, 561
U.S. 63, 70, 72 (2010)).  When a delegation clause is included,
a Court cannot decide threshold questions of arbitrability
"unless a party challenge[s] the delegation clause
[specifically] and the court concludes that the delegation
clause is not enforceable."  Id. (citing MacDonald v. CashCall,
Inc., 883 F.3d 220, 226 (3d Cir. 2018) (noting that a delegation
clause is severable from the underlying arbitration agreements
such that unless it is successfully challenged, it must be

treated as valid contract that must be enforced under the FAA's enforcement provisions)).

2. The DAAA

Frederick and Global both acknowledge the existence of the DAAA.  However, Frederick and Global disagree on a number of aspects of the DAAA and its purported arbitration clause.

a. Applicable Law

To begin, the parties disagree about which state's laws should apply in the first step of the Court's analysis.  When deciding choice of law issues, New Jersey relies on a "flexible governmental-interest approach."  <u>Lebergern v. Forman</u>, 471 F.3d 434, 428 (3d Cir. 2006).  To apply this approach, a court must first determine whether there is an actual conflict between the laws of the potential forums.  <u>Id.</u>  If there is no conflict and New Jersey would apply its own law, a federal court sitting in diversity will also apply New Jersey law.  <u>Id.</u>

Frederick asserts that New Jersey law applies to this agreement and that Global and other Defendants violated various state criminal statutes by engaging in the unauthorized practice of law and unlicensed debt adjusting and related financial services such as money remitting.  Global counters that the DAAA specifies that Oklahoma law applies to this agreement.  However, Global maintains that the Court would reach the same conclusion under either state's law.  Global also acknowledges that it has

"consistently taken the position that New Jersey law applies on the issue of the arbitration agreement validity in cases involving similar or identical consumer arbitration agreements as the one at issue in this case."  The Court notes that throughout Global's brief on this matter, Global has relied on New Jersey case law.

The parties agree that there is no conflict between Oklahoma law and New Jersey law.  The Court finds that New Jersey would apply its own law to this case in the interest of uniformity and predictability across other disputes involving Global.  See P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 154 (N.J. 2008) ("The interests of judicial administration require courts to consider issues such as practicality and ease of application, factors that in turn further the values of uniformity and predictability.").  Because this Court sits in diversity, it will apply New Jersey law.

b. Delegation Clause

Next the parties dispute whether the DAAA contains a valid delegation clause.  A valid delegation clause gives the arbitrator the primary power to decide the arbitrability of a specific claim.  See Rent-A-Ctr., 561 U.S. at 75.  Global asserts that when the parties' arbitration agreement delegates questions of arbitrability to an arbitrator, courts must respect the parties' contractual delegation.  See ECF. No. 6 at 12

13

(citing Henry Schein, Inc. v. Archer & White Sales Inc., 139 S.Ct. 524, 529 (2019)).  However, Henry Schein also states that "courts 'should not assume the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" Henry Schein, 139 S.Ct. at 531 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

The Third Circuit has held that "[u]nder New Jersey law, 'the law presumes that a court, not an arbitrator, decides an issue concerning arbitrability.'" Moon, 868 F.3d at 213 (quoting Morgan v. Sanford Brown Institute, 225 N.J. 289, 304 (2016)).  In order to overcome this presumption, a delegation clause must offer "'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'" Id. (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)) (alterations in original).  The Third Circuit held in Moon that because the arbitration clause mentioned neither arbitrability nor the venue for deciding it, the parties did not agree to arbitrate arbitrability.  Id. at 214.

In this case, Global argues that the DAAA contains a delegation clause and points to this language: "[i]n the event of any controversy, claim or dispute, whether statutory or otherwise, between the parties arising out of or relating to this Agreement . . . including the determination of the scope or

14

applicability of this Agreement to arbitrate, shall be
determined by arbitration. . . ."[6]  The DAAA also offers a
definition of the term "binding arbitration" at the end of the
arbitration clause.  This definition reads:

> *Binding arbitration means that both parties*
> *are giving up the right to trial by a jury.*
> It also means that both parties give up the
> right to appeal from the arbitrator's ruling
> except for a narrow range of issues that can
> or may be appealed. It also means that
> discovery may be severely limited by the
> arbitrator. This section and the requirement
> to arbitrate shall survive any termination.
> (emphasis in original).

According to Global, this language is sufficiently similar to
the delegation clause discussed in <u>Rent-A-Center</u>, which reads:

> [t]he Arbitrator, and not any federal,
> state, or local court or agency, shall have
> exclusive authority to resolve any dispute
> relating to the interpretation,
> applicability, enforceability or formation
> of this Agreement including, but not limited
> to any claim that all or any part of this
> Agreement is void or voidable.

Frederick contends that the purported delegation clause in
the DAAA is not valid.  Frederick highlights the size and
formatting of the font used for the delegation clause in the
DAAA as evidence that the parties did not agree to arbitrate

---

[6] Global also contends that even if the Court holds the
delegation clause is not valid, the Court should still compel
arbitration because "the dispute clearly falls within the scope
of the Arbitration Agreement."  ECF No. 6-1, at 13.

arbitrability.[7]  Frederick further argues that the purported delegation clause in the DAAA is more similar to the delegation clause discussed in <u>Morgan v. Sanford Brown Institute</u>, 225 N.J. 289 (2016).  In <u>Morgan</u>, the New Jersey Supreme Court held that the following delegation clause did not clearly and unmistakably show the parties intended to delegate arbitrability: "Any objection to arbitrability or the existence, scope, validity, construction or enforceability of this arbitration agreement shall be resolved pursuant to this paragraph (the Arbitration Agreement)."  <u>Id.</u> at 306.  According to the Supreme Court of New Jersey, this delegation clause was not valid because "[t]he *paragraph* does not explain that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations; nor does it explain that arbitration is a substitute for bringing a claim before a court or jury." <u>Id.</u> (emphasis in original).

In this case, the Court agrees with Global that this delegation clause more closely resembles the language used in <u>Rent-A-Center</u> than the clauses used in <u>Morgan</u> and <u>Moon</u>.  Unlike the delegation clause in <u>Moon</u>, Global's delegation clause mentions both arbitrability and offers a venue for deciding the

---

[7] Frederick specifically highlights that "the whole clause measures .75 inches and includes seven lines with any space between them."  According to Frederick, "the letters measure 1/16th or .0625 inches.  The font size is 4.5 points."

16

issue.  Furthermore, Global's delegation clause also expressly covers statutory claims and offers at least a partial definition of the term "binding arbitration."  Though Global's delegation clause may lack some of the clarity present in the <u>Rent-A-Center</u> delegation clause, the Court finds that it does communicate that an arbitrator will decide whether the parties agreed to arbitrate legal claims.  The Court finds therefore that the DAAA contains a valid delegation clause.

Having found that the DAAA contains a valid delegation clause, the Court will not assess any threshold questions of arbitrability such as validity and scope.[8]  See <u>Singh</u>, 939 F.3d at 215 (holding that courts cannot decide threshold questions of arbitrability unless a delegation clause is specifically and successfully challenged as unenforceable).

The Court will grant Global and Comerica's motion to compel arbitration.

3. The PLSA

a. Applicable Law

As with the DAAA, the parties to the PLSA disagree about which law applies to this agreement.  FKA argues that the PLSA

---

[8] As with all other issues regarding the validity and scope of the DAAA arbitration provision, it will be for the arbitrator to determine whether the arbitration clause is invalid because Global violated the criminal laws of New Jersey in its dealings with Plaintiff.

specifically states that Delaware law governs this agreement. Frederick contends that New Jersey law applies to this agreement because of the ambiguous wording in the PLSA. Frederick also asserts that this Court should refuse to enforce the choice of law clause in the PLSA because there is no material linkage between Delaware and the transaction between Frederick and FKA.

As stated above, New Jersey relies on a "flexible governmental-interest approach." Lebergern, 471 F.3d at 428. The Court will first determine if there is a conflict between Delaware and New Jersey. Both parties agree that Delaware and New Jersey law do not conflict.

New Jersey choice of law rules provide that "when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey Courts will uphold the contractual choice." Collins v. Mary Kay, Inc., 874 F.3d 176, 183-84 (3d Cir. 2017). However, this general statement is not without exception. If either: "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the

18

parties." <u>Instructional Sys., Inc. v. Comput. Curriculum Corp.</u>,

130 N.J. 324, 342 (N.J. 1992) (citing Restatement (Second) of

Conflicts of Laws § 187 (1969)).  Frederick contends that this

case falls into the first exception.

Because neither party is a citizen of Delaware, the

contract was not negotiated, executed or signed in Delaware, and

Delaware otherwise had no relationship to this case, the Court

will decline to uphold the choice of law clause in the PLSA.

The Court will apply New Jersey law.

   b. Validity and Scope of the Arbitration Clause

The parties disagree about the validity and scope of the

arbitration clause.  FKA claims the arbitration clause is valid

because it meets both elements required by the FAA: (1) it is in

writing; and (2) it is part of "a contract evidencing a

transaction involving [interstate] commerce."  See 9 U.S.C. § 2.

FKA argues that it provided Frederick with an attorney licensed

in New Jersey at all times during its relationship with

Frederick and therefore did not violate criminal laws regulating

attorneys.

Frederick claims that the arbitration clause is not valid

because none of the FKA Defendants are admitted to practice law

in New Jersey.  Therefore, Frederick argues that the arbitration

clause is the result of criminal activity and not enforceable.

Frederick also relies on the same arguments she used to

undermine the validity of the arbitration and delegation clauses
in the DAAA, citing the size and formatting of the text in the
PLSA.  In essence, she claims she did not mutually assent to the
arbitration clause.

Because the PLSA does not contain a delegation clause, the
Court will determine threshold questions of arbitrability.  See
Moon, 868 F.3d at 213 (quoting Morgan, 225 N.J. at 304) ("Under
New Jersey law, 'the law presumes that a court, not an
arbitrator, decides an issue concerning arbitrability.'").  As
with the DAAA, Frederick signed the PLSA, so the Court must
presume that she understood and assented to the terms of it.
See Sutton, 2020 WL 728815, at *4 (citing Stelluti, 203 N.J. at
305).  Frederick's allegation that nothing in the PLSA alerted
her to the inclusion of an arbitration agreement is not evidence
of fraud or misconduct.  The PLSA included a section title that
read "Dispute Resolution • Arbitration • Choice of Law."
Garrett Elias's name and bar number also appear on the PLSA.

However, the Court finds that the arbitration clause is
invalid because it fails to meet the standards described in In
re Remicade, 938 F.3d 515 (3d Cir. 2019).  The arbitration cause
does not identify the general substantive area that the
arbitration clause covers.  It merely mentions "any dispute that
cannot be resolved between the parties after 180 days."  The
arbitration clause does not reference the types of claims waived

by the provision.  Unlike the DAAA, the PLSA arbitration clause makes no mention of any statutory rights Frederick waived by signing the PLSA.  The arbitration clause does state that arbitration "replaces the right to go to court before a judge or jury which may limit each party's rights to discovery and appeal," but this is not adequate to rescue an otherwise invalid arbitration clause.

The Court will deny FKA's motion to compel arbitration.[9]

III. CONCLUSION

For the reasons detailed above, the Court will grant Global and Comerica's motion to compel arbitration.  The Court will deny FKA's motion to compel arbitration.  An appropriate order will be entered.


Date:  June 30, 2020                 s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.


---

[9] In light of this disposition of FKA's motion, the Court need not address Plaintiff's alternative argument that the arbitration clause is unenforceable because FKA violated the criminal laws of New Jersey.

21